|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | FOR THE EASTERN DISTRICT OF CALIFORNIA | |
| 10 | | |
| 11 | ROMEO PALMA, | No. 1:18-cv-00121-DAD-MJS |
| 12 | Plaintiff, | |
| 13 | v. | ORDER REQUIRING SUPPLEMENTAL BRIEFING |
| 14 | GOLDEN STATE FC, LLC, d/b/a AMAZON.COM, | (Doc. No. 10) |
| 15 | | |
| 16 | Defendant. | |

This matter is before the court on plaintiff's motion to remand (Doc. No. 10) and defendant's motion to dismiss. (Doc. No. 12.) On March, 20, 2018, those motions came before the court for hearing. Attorney Graham Lambert appeared on behalf of plaintiff Romeo Palma. Attorney Barbara J. Miller appeared on behalf of Golden State FC, LLC ("Golden State"). However, as explained below, the court has determined that it requires supplemental briefing from defendant in order to resolve plaintiff's motion to remand.

**BACKGROUND**

In his first amended complaint ("FAC"), plaintiff alleges as follows. Plaintiff is employed by defendant in its Patterson, California fulfillment center. (Doc. No. 11 (FAC) at ¶ 11.) Plaintiff's job duties at the fulfillment center include packaging, loading, unloading, and various other tasks. (*Id.* at ¶ 8.) Plaintiff brings this action on behalf of himself and all other similarly

situated employees, alleging that they have been exposed to, have suffered, and/or were permitted to work under defendant's unlawful employment practices. (*Id.* at ¶ 18.) The FAC defines the class as "[a]ll current or former California residents who worked for Defendant as non-exempt employees at any time beginning four years prior to the filing of the Complaint through the date notice is mailed to the Class (the "Class period")." (*Id.* at ¶ 19.)

According to the FAC, employees are required to report for duty at the beginning of their shift, but prior to doing so, they must "clock in." (*Id.* at ¶ 10.) In addition, upon ending their shift, employees must "clock out." (*Id.*) However, the facility in which the class members work is quite large, and the location to clock in and clock out is frequently located far away from where an employee actually performs his or her job duties. (*Id.* at ¶¶ 9–10.) Accordingly, it often takes several minutes to walk from the clock in location to where an employee must report for duty and shifts frequently last longer than the scheduled ten hours to account for time clocking in and out. (*Id.* at ¶¶ 10, 11.) Plaintiff argues that under California law, the fact that the shifts lasted more than ten hours necessitates an additional rest break, which was not provided by defendant. (*Id.* at ¶ 12.)

Plaintiff asserts four causes of action against defendant. On January 3, 2018, defendant removed this action to this court. (Doc. No. 1.) On February 2, 2018, plaintiff filed a motion to remand. (Doc. No. 10.) On February 7, 2018, plaintiff filed its FAC.[1] (Doc. No. 11.) On February 20, 2018, defendant moved to dismiss plaintiff's second cause of action. (Doc. No. 12.) Oppositions to both motions were filed on March 6, 2018. (Doc. Nos. 13, 14.) Replies were filed on March 13, 2018. (Doc. Nos. 15, 16.)

**LEGAL STANDARD**

The Class Action Fairness Act of 2005 ("CAFA") gives federal courts jurisdiction over class actions if (1) the class has more than 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, ___ U.S. ___, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)). A defendant's

---

[1] The court has examined both the original complaint and the FAC, but for purposes of determining whether this court possesses jurisdiction, the two complaints appear identical.

2

notice of removal under CAFA "'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart*, 135 S. Ct. at 554). However, if the plaintiff contests (or the court questions) whether the amount in controversy requirement has been satisfied, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 135 S. Ct. at 554. When federal jurisdiction is challenged, "the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million." *Ibarra*, 775 F.3d at 1197. In cases which are removed pursuant to CAFA, there exists no "antiremoval presumption." *Dart*, 135 S. Ct. at 554; *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183–84 (9th Cir. 2015) (noting that in passing CAFA, Congress had an "overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications") (quoting S. REP. NO. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34).

**DISCUSSION**

In support of its contention that the amount in controversy requirement is satisfied here, defendant pointed the court to evidence submitted in conjunction with its notice of removal. (*See* Doc. No. 1-3 (the "Nickerson Declaration").) This evidence consists of a declaration by Peter Nickerson, an economist and consultant specializing in economic and statistical analysis. (*Id.* at ¶ 2.) Nickerson conducted an analysis of defendant's payroll data for putative class members in this action, but limited his analysis to only one of defendant's facilities. (*Id.* at ¶ 3.) Applying Nickerson's analysis to plaintiff's causes of action, defendant averred in its notice of removal that the amount in controversy is well in excess of the jurisdictional minimum. (*See* Doc. No. 1 at 9–10.) In response to concerns about the methodology employed by Nickerson which were raised in plaintiff's opposition brief, defendant provided a second Nickerson Declaration addressing those concerns. (Doc. No. 14-1.)

At oral argument, plaintiff raised a new objection to the methodology of these analyses. In both declarations submitted by Nickerson, the analysis assumed a violation rate of 100%—that

3

is, it assumed that in every case in which an employee worked a certain number of hours, the employee was not provided with a third rest break as required. Plaintiff contended at oral argument that this assumption is unwarranted based on the allegations in the complaint, resulting in an inflated damages estimate.

In a case presenting similar circumstances, the Ninth Circuit noted that "[t]he complaint alleges a 'pattern and practice' of labor law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." *Ibarra*, 775 F.3d at 1199. Because the complaint did not "allege that [defendant] universally, on each and every shift, violate[d] labor laws by not giving rest and meal breaks," defendant bore the burden of showing that its estimated amount in controversy was based on a violation rate "grounded in real evidence." *Id.* Because neither party in *Ibarra* had submitted evidence as to the possible violation rate, the Ninth Circuit remanded the case to the district court with instructions to consider such evidence from the parties. *Id.* at 1200; *see also Salcido v. Evolution Fresh, Inc.*, No. 2:14-cv-09223-SVW-PLA, 2016 WL 79381, at *4 (C.D. Cal. Jan. 6, 2016) ("It would be unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a 'pattern and practice' of labor violations."); *Moreno v. Ignite Rest. Grp.*, No. C 13-05091 SI, 2014 WL 1154063, at *5 (N.D. Cal. Mar. 20, 2014) (noting that district courts in the Northern District of California "disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support.").

Here, plaintiff's complaint alleges that defendant "regularly" requires plaintiff to work shifts in excess of 10 hours without providing a third rest break. (FAC at ¶ 2.) However, neither party has addressed whether the FAC alleges that this practice was "universally followed" in every instance. *Ibarra*, 775 F.3d at 1199. Because plaintiff has challenged jurisdiction by arguing that the violation rate in this case is less than 100%, defendant now bears the burden of demonstrating that jurisdiction is proper in this court. *Id.* at 1197.

Accordingly, within **twenty-one days** of the date of service of this order, defendant is ordered to submit supplemental briefing addressing the following issues: (1) whether the allegations of the FAC, as pleaded, allege a 100% violation rate under *Ibarra*; (2) if not, what

constitutes a reasonable violation rate based on the allegations of the FAC and the available evidence; and (3) what constitutes a reasonable estimate of the amount in controversy in light of that violation rate. *See Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 WL 708115, at *3 (C.D. Cal. Feb. 5, 2018) ("Defendants bear the burden to demonstrate that its estimated amount in controversy relies on reasonable assumptions."); *Lafountain v. Meridian Senior Living, LLC*, No. CV 15-03297-RGK (PJWX), 2015 WL 3948842, at *3 (C.D. Cal. June 29, 2015) (granting plaintiff's motion to remand on the basis that "Defendant has not evidentiarily supported the variables used in its amount in controversy calculations"). Plaintiff is directed to file its response to defendant's supplemental brief, if any, within **fourteen days** thereafter.

IT IS SO ORDERED.

Dated: **April 12, 2018**

UNITED STATES DISTRICT JUDGE