UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROMEO PALMA,

    Plaintiff,

v.

GOLDEN STATE FC, LLC, d/b/a AMAZON.COM,

    Defendant.

No. 1:18-cv-00121-DAD-MJS

ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS

(Doc. Nos. 10, 12)

This matter is before the court on plaintiff's motion to remand (Doc. No. 10) and defendant's motion to dismiss. (Doc. No. 12.) On March, 20, 2018, those motions came before the court for hearing. Attorney Graham Lambert appeared on behalf of plaintiff Romeo Palma. Attorney Barbara J. Miller appeared on behalf of defendant Golden State FC, LLC. Having reviewed the parties' briefing and heard arguments, and for the reasons that follow, plaintiff's motion to remand will be denied, and defendants' motion to dismiss will be granted.

**BACKGROUND**

In his first amended complaint, plaintiff alleges as follows. Plaintiff is employed by defendant in its Patterson, California fulfillment center as a non-exempt employee. (Doc. No. 11 ("FAC") at ¶ 11.) Plaintiff's job duties at the fulfillment center include packaging, loading, unloading, and various other tasks. (*Id.* at ¶ 8.) Plaintiff brings this action on behalf of himself

and all other similarly situated employees, alleging that they have been exposed to, have suffered, and/or were permitted to work under defendant's unlawful employment practices. (*Id.* at ¶ 18.) Plaintiff's FAC defines the proposed class as "[a]ll current or former California residents who worked for Defendant as non-exempt employees at any time beginning four (4) years prior to the filing of the Complaint through the date notice is mailed to the Class (the "Class period")." (*Id.* at ¶ 19.)

According to the FAC, defendant's employees are required to report for duty at the beginning of their shift, but that prior to doing so, they must "clock in." (*Id.* at ¶ 10.) In addition, upon ending their shift, employees must "clock out." (*Id.*) However, the facility in which the class members work is quite large, and the location to clock in and clock out is frequently located a considerable distance away from where an employee actually performs his or her job duties. (*Id.* at ¶¶ 9–10.) Accordingly, plaintiff alleges, it often takes several minutes to walk from the clock in location to where an employee must report for duty. (*Id.* at ¶ 10.) The result of this arrangement is that while employees may be scheduled to work a 10-hour shift, in practical effect, their shifts frequently last longer than 10 hours to account for the time spent clocking in and out. (*Id.* at ¶ 11.) Plaintiff argues that under California law, the fact that the shifts lasted more than 10 hours necessitates an additional rest break, which was not provided by defendant. (*Id.* at ¶ 12.)

Based upon these allegations, plaintiff asserts four causes of action against defendant. On January 3, 2018, defendant removed this action to this federal court. (Doc. No. 1.) On February 2, 2018, plaintiff filed its motion to remand. (Doc. No. 10.) On February 7, 2018, plaintiff filed its FAC.[1] (Doc. No. 11.) On February 20, 2018, defendant moved to dismiss plaintiff's second cause of action. (Doc. No. 12.) Oppositions to both motions were filed on March 6, 2018. (Doc. Nos. 13, 14.) Replies were filed on March 13, 2018. (Doc. Nos. 15, 16.)

/////

/////

---

[1] The court has examined both plaintiff's original complaint and the FAC, but for purposes of determining whether this court possesses subject-matter jurisdiction, the two complaints appear identical.

2

**LEGAL STANDARD**

**A.  Motion to Remand**

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Thus, removal of a state action may be based on either diversity jurisdiction or federal question jurisdiction. *City of Chicago*, 522 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Removal jurisdiction is based entirely on federal statutory authority. *See* 28 U.S.C. § 1441 *et seq.* These removal statutes are strictly construed, and removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence. *Geographic Expeditions*, 599 F.3d at 1106–07; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus*, 980 F.2d at 566–67. The district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").

**B.  Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, the court need not assume the truth of legal conclusions cast in the form of factual allegations. *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## DISCUSSION

**A.  Plaintiff's Motion to Remand**

Because it implicates the court's jurisdiction over this matter, the court first addresses plaintiff's motion to remand. Defendant invoked this court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), which gives federal courts jurisdiction over class actions if (1) the class has more than 100 members, (2) the parties are minimally diverse, and (3) the amount in controversy exceeds $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, ___ U.S. ___, 135 S. Ct. 547, 552 (2014) (citing 28 U.S.C. § 1332(d)). In moving to remand this action to state court, plaintiff contends that the amount in controversy threshold is not met here. (Doc. No. 10.)

A defendant's notice of removal under CAFA "'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)

(quoting *Dart*, 135 S. Ct. at 554). However, if the plaintiff contests (or the court questions) whether the amount in controversy requirement has been satisfied, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 135 S. Ct. at 554. In cases which are removed pursuant to CAFA, there exists no "antiremoval presumption." *Id.*; *see also Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183–84 (9th Cir. 2015) (noting that in passing CAFA, Congress had an "overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications") (quoting S. REP. NO. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34).

Here, although not required to do so, defendant provided evidentiary support addressing the amount in controversy in conjunction with its notice of removal. (*See* Doc. No. 1-3 (the "Nickerson Declaration").) This material consists of a declaration by Peter Nickerson, an economist and consultant specializing in economic and statistical analysis. (*Id.* at ¶ 2.) Nickerson conducted an analysis of defendant's payroll data for putative class members in this action, but limited his analysis to only one of defendant's facilities. (*Id.* at ¶ 3.) After applying Nickerson's analysis to all causes of action in the complaint, defendant averred in its notice of removal that the amount in controversy in this action is well in excess of the jurisdictional minimum. (*See* Doc. No. 1 at 9–10.)

In the pending motion to remand, plaintiff contends that the methodology of the Nickerson Declaration was flawed. Specifically, plaintiff argues the Nickerson Declaration was over-inclusive by including all shifts in which an employee worked more than 10 hours. According to plaintiff, this action concerns only individuals who were scheduled to work 10-hour shifts but in fact worked longer than 10 hours. (*See* Doc. No. 10 at 6.) It therefore excludes, for instance, individuals who were scheduled to work 11.5-hour shifts. Plaintiff argues that because the Nickerson Declaration includes persons scheduled to work 11.5-hour shifts in its analysis, it overestimates the total amount of damages at issue in this action.

The parties have devoted much of their briefing to arguing this point. However, the court need not resolve this dispute because, in response to the instant motion to remand, defendant has

provided a second Nickerson Declaration addressing plaintiff's concerns. (Doc. No. 14-1.) This second Declaration limits its analysis to employees who were (a) scheduled to work a 10-hour shift, (b) worked more than 10 hours according to their clock out time, but (c) worked less than 11.5 hours.[2] Even excluding the potential recovery of attorney's fees, the second Nickerson Declaration reflects a finding that the amount in controversy here is well over $5,000,000. (*See* Doc. No. 14.)

At oral argument, plaintiff raised yet another objection to the methodology of these analyses. In both declarations submitted by Nickerson, the analysis assumed a violation rate of 100%—that is, it assumed that according to the complaint as pleaded, in every case in which an employee worked a certain number of hours, the employee was not provided with a third rest break as required. Plaintiff contended at oral argument that this assumption is unwarranted based on the allegations of the complaint, resulting in an inflated damages estimate by defendant.

In a case presenting similar facts, the Ninth Circuit noted that "[t]he complaint alleges a 'pattern and practice' of labor law violations but does not allege that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." *Ibarra*, 775 F.3d at 1199. Because the complaint did not "allege that [defendant] universally, on each and every shift, violate[d] labor laws by not giving rest and meal breaks," defendant bore the burden of showing that its estimated amount in controversy was based on a violation rate "grounded in real evidence." *Id.* Because neither party in *Ibarra* had submitted evidence as to the possible violation rate, the Ninth Circuit remanded the case to the district court with instructions to consider such evidence from the parties. *Id.* at 1200; *see also Salcido v. Evolution Fresh, Inc.*, No. 2:14-cv-09223-SVW-PLA, 2016 WL 79381, at *4 (C.D. Cal. Jan. 6, 2016) ("It would be unreasonable to assume a 100% violation rate based only on a plaintiff's allegation of a 'pattern

---

[2] Capping the analysis at an 11.5 hour maximum appears to have been done by defendant in response to an exhibit submitted by plaintiff in support of the motion to remand. (Doc. No. 10 at 11.) That exhibit is a copy of the shifts scheduled by defendant for its employees. (*Id.* at 6.) According to plaintiff's exhibit, employees scheduled to work 8 and 10 hour shifts receive only two rest breaks, while those scheduled for 11.5 hour shifts receive three rest breaks. (*Id.* at 11.) Therefore, by limiting its analysis to employees who worked less than 11.5 hours, the second Nickerson Declaration excludes employees who were scheduled to receive a third rest break.

6

and practice' of labor violations."); *Moreno v. Ignite Rest. Grp.*, No. C 13-05091 SI, 2014 WL 1154063, at *5 (N.D. Cal. Mar. 20, 2014) (noting that district judges in the Northern District of California "disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support.").

Here, because neither party had provided briefing on this issue, the court required supplemental briefing from the parties. (Doc. No. 25.) Specifically, the court directed the parties to address three discrete issues: first, whether the complaint, as pleaded, alleged a violation rate of 100%; second, in the event the complaint alleged a violation rate of less than 100%, what constitutes a reasonable violation rate based on the allegations of the complaint; and third, in light of that violation rate, what constitutes a reasonable estimate of the amount in controversy. (*See* Doc. No. 25 at 4–5.) The parties have now filed their supplemental briefs in response to the court's inquiry. (Doc. Nos. 28, 29.)

As discussed above, plaintiff contends in his motion to remand that this action concerns only individuals who were scheduled to work 10-hour shifts but in fact proceeded to work longer than 10 hours. (*See* Doc. No. 10 at 6.) Assuming this to be true for present purposes, defendant submitted yet a third Nickerson Declaration from its expert stating that at four of defendant's facilities in California, there were approximately 885,000 shifts meeting these criteria during the relevant time period. (Doc. No. 28-1 at ¶ 5.) Against this number, defendant applies a quite conservative violation rate of roughly 25%. *See Varsam v. Lab. Corp. of Am.*, No. 14CV2719 BTM JMA, 2015 WL 4199287, at *3 (S.D. Cal. July 13, 2015) (finding that a 25% violation rate "would be a conservative and reasonable assumption" based on allegations that defendants "had a practice and/or policy of requiring Plaintiff and class members to clock out for rest periods"); *see also Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) (finding that an assumed violation rate of 50% was reasonable in light of allegations that defendant "maintained a policy or practice of not paying additional compensation for missed meal and/or rest periods") (internal quotation marks omitted). Applying the mean hourly wages at each of those four facilities, defendant concludes that the amount in controversy as to plaintiff's first cause of action is over $7,000,000. (Doc. No. 28 at 9.)

The court finds this estimate to be a reasonable approximation of the amount in controversy in light of the allegations in the FAC. The FAC unequivocally alleges that "Defendant does not provide Plaintiff and class members with time to clock-in and clock-out, and travel to the location to report for work, in scheduling Plaintiff and Class member's shifts." (FAC at ¶ 10.) The FAC speaks in absolutes—indeed, were it otherwise, it is doubtful whether this action could be maintained as a class action. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (noting that claims in a class action must contain a "common contention . . . of such a nature that it is capable of classwide resolution"). The court finds that an assumed violation rate of 25% is more than reasonable in light of the allegations in the FAC.

Moreover, plaintiff's response on this point is unpersuasive. Plaintiff contends that defendant has not established jurisdiction under CAFA because defendant has failed to provide the "actual violation rate." (Doc. No. 29 at 9.) As an initial matter, the court reiterates that the standard for establishing the amount in controversy under CAFA is a preponderance of the evidence, not mathematical certainty. *See Dart*, 135 S. Ct. at 554. Plaintiff has not submitted any further evidence to rebut the third Nickerson Declaration, leaving the court with limited support for plaintiff's position. Moreover, defendant need not state the amount of damages that are actually recoverable in this action. *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (cautioning against "conflating the amount in controversy with the amount of damages ultimately recoverable"). Defendant denies the allegations of the FAC and states that no violation occurred. What plaintiff appears to seek from defendant is not merely an estimate of the amount in controversy, but rather identification of the number of violations that actually occurred. That burden, however, remains with plaintiff. *See Amaya v. Consol. Container Co.*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909, at *2 (C.D. Cal. July 28, 2015) ("[D]efendants should not be required to fall on their swords to establish the propriety of removal jurisdiction."); *Unutoa v. Interstate Hotels & Resorts, Inc.*, No. 2:14-CV-09809-SVW-PJ, 2015 WL 898512, at *3 (C.D. Cal. Mar. 3, 2015) ("[A] removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.") (citing *Oda*, 2015 WL 93335, at *5).

/////

Because the court concludes that defendant has established an amount in controversy in excess of $5,000,000 by a preponderance of the evidence, plaintiff's motion to remand will be denied.

**B.      Motion to Dismiss**

The court next addresses defendant's motion to dismiss plaintiff's second cause of action, which alleges a violation of California Labor Code § 510. As discussed above, plaintiff alleges that class members worked shifts exceeding ten hours, but were not provided a third rest break as required.

Under California law, employees are entitled to one paid 10-minute rest period per four hours of work, or a major fraction thereof. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) (citing Cal. Code Regs. tit. 8, § 11070(12)). The California Supreme Court has defined the phrase "major fraction thereof" to mean more than half. *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1029 (2012). Here, plaintiff alleges that an individual who works a shift of exactly 10 hours is entitled to only two rest breaks, while an individual who works a shift greater than 10 hours is entitled to an additional rest break. (FAC at ¶ 1.) The FAC also alleges that this third rest break was not provided to the proposed class members. (*Id.* at ¶ 12.)

Plaintiff brings his second cause of action under California Labor Code § 510, which provides that "[a]ny work in excess of eight hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Relying on this provision, plaintiff contends that all employees who worked over 10 hours and did not receive a 10-minute rest break should be compensated for those 10 minutes at one and a half times their normal rate of pay.

The California Labor Code contains a specific provision related to the denial of rest breaks. That provision, § 226.7, states that if an employer fails to provide an employee with a rest break or meal break, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7. The first cause of action presented by plaintiff's FAC alleges a violation of this exact provision, and defendant has not moved for dismissal of that

9

claim. (FAC at 8–9.) However, plaintiff argues that based upon the facts alleged in the FAC, defendant's failure to provide a third rest break triggers liability under *both* § 226.7 *and* § 510 because the third rest break would have taken place during overtime hours.

The court is unaware of any case addressing whether an employer's failure to provide a rest break permits an employee to seek overtime compensation under § 510 for the time in which the employee would have taken that rest break, and plaintiff has provided no authority to support this proposition. However, the California Supreme Court appears to have foreclosed plaintiff's contention in this regard. In a case determining the statute of limitations governing claims brought under § 226.7, the California Supreme Court noted that for "[a]n employee forced to forgo his or her meal period [or rest break] . . . Section 226.7 provides *the only compensation for these injuries*" under California law. *Murphy*, 40 Cal. 4th at 1104 (emphasis added). If plaintiff is correct that the putative class members were unlawfully denied a third rest break, they already possess an adequate remedy at law pursuant to § 226.7. Plaintiff cites no authority for the proposition that § 510 provides an additional remedy.[3] Finding no other allegations in the FAC that could plausibly support a claimed violation of § 510, defendant's motion to dismiss plaintiff's second cause of action alleging a violation of California Labor Code § 510 will be granted.

## CONCLUSION

For the reasons set forth above,

1. Plaintiff's motion to remand (Doc. No. 10) is denied;
2. Defendant's motion to dismiss (Doc. No. 12) is granted;
3. Plaintiff is granted leave to amend his complaint to attempt to cure the deficiencies identified in this order; and

---

[3] Rather, plaintiff relies solely on the Washington Supreme Court's decision in *Washington State Nurses Association v. Sacred Heart Medical Center*, 175 Wash. 2d 822, 287 P.3d 516 (2012), holding that employees deprived of rest breaks could recover both for the rest break and for the overtime they would have been paid if the rest break had been provided. However, that case interpreted Washington state law and has not been cited by any California state court. Accordingly, the decision in *Washington State Nurses Association* has no bearing on this court's interpretation of California law in this regard.

4. Within 28 days of service of this order, plaintiff is directed either to file an amended complaint, or to file a notice of intent to proceed only on the remaining claims.

IT IS SO ORDERED.

Dated: **July 18, 2018**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE